UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAN JUANA ESCARENO,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC.,<br><br>Defendant. | Case No. 19-cv-07438<br><br>Hon. Martha M. Pacold |

## MEMORANDUM OPINION AND ORDER

San Juana Escareno filed this case in state court against Walmart Inc., seeking damages related to a fall at a Walmart store. Walmart removed the case to federal court. Escareno now moves to remand the case to state court [8]. As explained below, the motion to remand is denied.

## BACKGROUND

On September 5, 2019, Escareno filed a complaint in the Circuit Court of Will County, alleging injuries from a fall at a Walmart store in Bolingbrook, Illinois. (Dkt. 1-1.)[1] The complaint sought damages "in excess of FIFTY THOUSAND ($50,000.00) DOLLARS plus costs." (*Id.* at 4.) The complaint did not address Escareno's state of citizenship.

Walmart received Escareno's complaint on September 13, 2019. (Dkt. 1 ¶ 3.)

Eighteen days later, on October 1, 2019, Walmart served Escareno with two requests for admission (RFAs) requesting that Escareno admit that when the action was filed and at present, Escareno was and remained a citizen of Illinois, and that the damages sought by Escareno in this action exceed $75,000. (Dkt. 1-3.)

On October 15, 2019, Escareno responded to the RFAs and admitted both. (Dkt. 11-3.)

---

[1] Docket entries are cited as "Dkt. [docket number]" followed by the page or paragraph number. Page number citations refer to the ECF page number.

On November 11, 2019, twenty-seven days after Walmart received Escareno's RFA responses, Walmart removed the case to federal court. (Dkt. 1.)

Escareno now seeks remand to state court. (Dkt. 8.) Escareno does not dispute that the requirements of diversity jurisdiction under 28 U.S.C. § 1332(a)(1) are met. They are. Escareno is a citizen of Illinois (Dkt. 11-3), Walmart is a citizen of Delaware and Arkansas (Dkt. 1 ¶ 7), and the amount in controversy exceeds $75,000 (Dkt. 11-3). But Escareno argues that Walmart's notice of removal was untimely.

## DISCUSSION

"The rules of procedure provide two different removal windows." *Walkerv. Trailer Transit, Inc.*, 727 F.3d 819, 820 (7th Cir. 2013). First, as relevant here, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, . . . ." 28 U.S.C. § 1446(b)(1). Second, "[e]xcept as provided [elsewhere], if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Escareno argues that only the first removal window (§ 1446(b)(1)) applies. Escareno contends that the complaint itself put Walmart on notice that the jurisdictional requirements were satisfied, that the 30-day clock started when Walmart was served with the complaint on September 13, 2019, and that the November 11, 2019 removal was untimely.

Walmart argues that the second removal window (§ 1446(b)(3)) applies. In Walmart's view, the face of the complaint did not reveal whether either requirement of diversity jurisdiction (amount in controversy or citizenship) was met, and Escareno's October 15, 2019 RFA responses were an "other paper from which it may first be ascertained that the case is one which is . . . removable" under § 1446(b)(3), starting the 30-day clock and making the November 11, 2019 removal timely.

Escareno responds that Walmart representatives knew that the requirements of diversity jurisdiction were satisfied before the complaint was filed, through discussions with Escareno herself on the day of the incident and through subsequent discussions with Escareno's prior counsel over a year and half regarding Escareno's ongoing treatment.

2

*Walker* squarely addressed these issues and "clarif[ied] the standard for determining when the 30–day time limit under § 1446(b)(3) is triggered—an issue that has divided district courts in this circuit." 727 F.3d at 823. *Walker* explained that "[t]he short removal time limit forces the defendant to make a prompt decision about removal once a pleading or other litigation document provides clear notice that the predicates for removal are present." *Id.* The Seventh Circuit held:

> It's clear that the 30–day removal clock is triggered *only* by the defendant's receipt of a pleading or other litigation paper facially revealing that the grounds for removal are present. Every circuit that has addressed the question of removal timing has applied § 1446(b) literally and adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper and, with respect to the jurisdictional amount in particular, requires a specific, unequivocal statement from the plaintiff regarding the damages sought.
> . . .
>
> We follow the lead of our sister circuits and now adopt the same approach. The 30–day removal clock does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present. With respect to the amount in controversy in particular, the pleading or other paper must specifically disclose the amount of monetary damages sought. This bright-line rule promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants.

*Id.* at 823–24 (emphasis in original) (citations and footnote omitted).

*Walker* noted that "all three states in our circuit restrict the plaintiff's ability to quantify the amount of damages sought in the complaint. . . . Jurisdictional requests for admission are a common device for determining whether the amount-in-controversy minimums are met." *Id.* at 824 n.4 (citations omitted).

The Seventh Circuit further explained: "Assessing the timeliness of removal should not involve a fact-intensive inquiry about what the defendant subjectively knew or should have discovered through independent investigation. . . . Again, as the text of the rule itself makes clear, the 30–day clock is triggered by pleadings, papers, and other litigation materials actually received by the defendant or filed with the state court *during the course of litigation.*" *Id.* at 825 (citations omitted) (emphasis added). "As applied to the amount-in-controversy requirement, the clock commences *only* when the defendant receives a *post-complaint* pleading or other

3

paper that affirmatively and unambiguously specifies a damages amount sufficient to satisfy the federal jurisdictional minimums." *Id*. (second emphasis added).[2]

Applying these principles here, the complaint did not affirmatively and unambiguously reveal that the predicates for removal were present. As to the amount in controversy, the complaint did not "specifically disclose the amount of monetary damages sought." *Walker*, 727 F.3d at 824. The complaint stated that Escareno was seeking damages in excess of $50,000 for her injuries, the resulting medical treatment, and money lost "by reason of being unable to follow her usual affairs and business as a result of said injuries." (Dkt. 1-1 at 3–4.) It does not provide any more information regarding the amount of damages. Nor did the complaint address Escareno's state of citizenship. Walmart promptly sent jurisdictional RFAs to obtain the relevant information. *See Walker*, 727 F.3d at 824 n.4.[3] The prelitigation discussions do not change the analysis. *See id.* at 825.

The 30-day removal clock began when Walmart received Escareno's RFA responses on October 15, 2019. Thus, the November 11, 2019 removal was timely.

## CONCLUSION

The motion to remand is denied.

Date: September 8, 2020                      /s/ Martha M. Pacold

---

[2] *Cf*. 28 U.S.C. § 1446(c)(3)(A) ("If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in *responses to discovery*, shall be treated as an 'other paper' under subsection (b)(3).") (emphasis added).

[3] *Compare Arnieri v. Cornhoff,* 807 F. Supp. 2d 739, 741 (N.D. Ill. 2011) (stating pre-*Walker* that "[f]or [defendant] to play ostrich in the face of those allegations, rather than removing the case within the 30–day period after its receipt of the Complaint (*or, at a minimum, immediately seeking information as to the amount in controversy* in time for a removal within that time frame . . .* ), subverts both the meaning and the purpose of Section 1446's first paragraph") (citation omitted) (emphasis added).